UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GREENTOPIA US, INC.<br><br>Plaintiff,<br><br>v.<br><br>CHOONG LEE INSURANCE, INC.;<br>RT SPECIALTY,<br>    a/k/a RYAN SPECIALTY, LLC;<br>    a/k/a RSG SPECIALTY, LLC;<br>AXIS SURPLUS INSURANCE COMPANY;<br>and ABC CORP. 1-10;<br><br>Defendants. | Civil Action No.: 2:25-cv-15273<br><br><br>**NOTICE OF REMOVAL** |

TO:   CHIEF JUDGE AND JUDGES OF THE UNITED STATES DISCTRIC COURT FOR THE DISTRICT OF NEW JERSEY

ON NOTICE TO:

Sean S. Kwak, Esq.
Kim, Lim & Partners
460 Bergen Boulevard, Suite 305
Palisades Park, New Jersey 07650
*Attorneys for Plaintiff*

Clerk- Law Division
Bergen County Justice Center
10 Main Street
Hackensack, New Jersey 07601

**PLEASE TAKE NOTICE** that defendant AXIS Surplus Insurance Company ("AXIS"), by and through its counsel, Lindabury McCormick Estabrook & Cooper, P.C., hereby removes the action pending in the Superior Court of New Jersey, Bergen County, Law Division, bearing Docket No. BER-L-4453-25 (the "Action"), pursuant to 28 U.S.C. §§ 1441 and 1446, in accordance with 28 U.S.C. §§ 1332, on the following grounds:

1.      Plaintiff Greentopia US, Inc. ("Plaintiff") filed this Action in the Superior Court of New Jersey, Bergen County, against defendants Choong Lee Insurance, Inc., RT Specialty a/k/a Ryan Specialty, LLC, a/k/a RSG Specialty, LLC, and AXIS, seeking declaratory judgment as to insurance coverage, alleging breach of contract, alleging negligence, claiming indemnification and contribution, alleging negligent misrepresentation, seeking reformation of contract, alleging the violation of N.J.S.A. § 17:22-6.63, and violations of N.J.S.A. § 17:22-6.50 and N.J.S.A. § 17:22-6.52.

2.      This Action is properly removed to this Court pursuant to 28 U.S.C. § 1332 because the procedural requirements for removal are satisfied, there is complete diversity of citizenship between Plaintiff and Defendants, and the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

3.      On or about July 3, 2025, Plaintiff commenced the Action by filing a Complaint bearing docket number BER-L-4453-25 ("Complaint") with the Clerk of the Superior Court of New Jersey, Bergen County, New Jersey.  A true and correct copy of Plaintiff's Complaint in the Action is attached hereto as **Exhibit A.**

4.      On or about August 12, 2025, prior to the filing of any responsive pleading, Plaintiff filed an Amended Complaint (the "Amended Complaint"). A true and correct copy of Plaintiff's Amended Complaint in the Action is attached hereto as **Exhibit B.**

5.      On or about August 18, 2025, AXIS was served with Plaintiff's Amended Complaint.  Removal is timely under 28 U.S.C. § 1446(b) because this Notice was filed within 30 days after receipt by AXIS through service of a copy of the Summons and Amended Complaint. A true and correct copy of the August 18, 2025, correspondence from the State of New Jersey,

2

Department of Banking and Insurance, Office of the Commissioner, regarding the service of Plaintiff's Amended Complaint in the Action is attached hereto as **Exhibit C.**

6.      There is complete diversity of citizenship between Plaintiff and Defendants. Plaintiff is a resident and citizen of the State of New Jersey.  Defendant Choong Lee Insurance, Inc., is a corporation organized under the laws of the State of New York with its principal place of business located in New York, New York.  Defendants RT Specialty a/k/a Ryan Specialty, LLC, a/k/a RSG Specialty, LLC, are Delaware Corporations with principal places of business located in New York, New York. AXIS is incorporated in Illinois and has a principal place of business in Georgia.

7.      Removal of the Action to the United States District Court is not based solely under 28 U.S.C. § 1441(a), and as a result consent to the removal of this action by the remaining defendants is not required.

8.      The United States District Court for the District of New Jersey encompasses the locality in which the Action is now pending and, thus, this Court is a proper forum for this action pursuant to 28 U.S.C. § 1441(a).

9.      As required by 28 U.S.C. § 1446(a), a copy of all process, pleadings and orders are attached hereto.

10.      AXIS, upon the filing of this Notice of Removal in the Office of the Clerk of the United States District Court for the District of New Jersey, has also filed an original Notice of Filing of Notice of Removal (a copy of which is annexed hereto as **Exhibit D**) with the Clerk of the Superior Court of New Jersey, Law Division, Bergen County Justice Center, 10 Main Street, Hackensack , New Jersey, 07601, to effect removal of this action to the United States District Court pursuant to 28 U.S.C. Section 1446(d).

3

11.     Simultaneous with the filing of this Notice of Removal, a copy of the Notice of Filing of Notice of Removal is being served upon Plaintiff's counsel, Sean S. Kwak, Esq., of Kim, Lim & Partners.

12.     No admissions of fact, law, or liability are intended by the filing of this Notice of Removal, and all defenses, motions, and pleas are expressly preserved.

**WHEREFORE,** defendant AXIS respectfully removes this action from the Superior Court of New Jersey, Bergen County, to this Court pursuant to 28 U.S.C. §§ 1441 and 1446 and in accordance with 28 U.S.C. § 1332. Should any questions arise as to this removal, defendant AXIS requests an opportunity to provide briefing and an oral argument as to why removal is proper.

By: /s/ *Jay Lavroff*
Jay Lavroff, Esq.
LINDABURY MCCORMICK ESTABROOK & COOPER, PC
53 Cardinal Drive
P.O. Box 2369
Westfield, NJ 07091
(973) 233-6800
Attorneys for Defendant, AXIS Surplus Insurance Company

Dated: September 4, 2025

4

## LOCAL RULE 11.2 CERTIFICATION

PURSUANT to Local Rule 11.2, the undersigned, counsel for defendant AXIS hereby certifies that the matter in controversy is not the subject of any other action pending in any court or of a pending arbitration or administrative proceeding and no other action, arbitration, or administrative proceeding is contemplated.

By: /s/ *Jay Lavroff*
        Jay Lavroff, Esq.
        LINDABURY MCCORMICK ESTABROOK
        & COOPER, PC
        53 Cardinal Drive
        P.O. Box 2369
        Westfield, NJ 07091
        (973) 233-6800
        Attorneys for Defendant, AXIS Surplus Insurance Company

Dated: September  4, 2025

10140586v2

# **<u>Exhibit A</u>**

**Kim, Lim & Partners**
Sean S. Kwak, Esq. (Bar ID.: 020422004)
460 Bergen Boulevard, Suite 305
Palisades Park, New Jersey 07650
Tel.: 201-585-7400
*Attorneys for Plaintiff*

| | |
|---|---|
| GREENTOPIA US, INC. | SUPERIOR COURT OF NEW JERSEY |
| Plaintiff, | BERGEN COUNTY – LAW DIVISION |
| v. | DOCKET NO.: **BER-L-        -** |
| CHOONG LEE INSURANCE, INC.; | |
| RT SPECIALTY, | Civil Action |
|    a/k/a RYAN SPECIALTY, LLC; | |
|    a/k/a RSG SPECIALTY, LLC; | |
| AXIS INSURANCE COMPANY, | |
|    a/k/a AXIS Insurance, LLC; | |
|    a/k/a AXIS Insurance Services, LLC; | |
|    a/k/a AXIS Insurance Services of New | |
|    Jersey, LLC | |
|    a/k/a AXIS Specialty Ins. Co.; | |
|    a/k/a AXIS Specialty U.S. Services, | **COMPLAINT** |
|    Inc.; | |
| AXIS Capital Group, | **WITH JURY DEMAND** |
|    a/k/a AXIS Capital, | |
|    a/k/a AXIS Capital Group; | |
|    a/k/a AXIS Capital Group, LLC; | |
|    a/k/a AXIS Capital Holdings Limited; | |
|    a/k/a AXIS Surplus Insurance Co.; and | |
| ABC CORP. 1-10; | |
| Defendants. | |

The plaintiff Greentopia US, Inc. ("Greentopia"), by and through their attorneys, Kim, Lim

& Partners, by way of Complaint against the defendants Choong Lee Insurance, Inc. ("CLI"), RT

Specialty (also known as Ryan Specialty, LLC; RSG Specialty, LLC; or RSG Insurance Services,

LLC), ("RT Defendants"), AXIS Insurance Company (also known as AXIS Insurance, LLC; AXIS

Insurance Services, LLC; AXIS Insurance Services of New Jersey, LLC; AXIS Specialty

Insurance Company; and AXIS Specialty U.S. Services, Inc.) and AXIS Capital Group (also

known as AXIS Capital; AXIS Capital Group; AXIS Capital Group, LLC; AXIS Capital Holdings

Limited, and AXIS Surplus Insurance Co.) ("AXIS Defendants"), hereby states as follows

## Preliminary Statement

1.     This action arises from the wrongful conduct of the insurance agent CLI, the broker

RT Defendants, and the insurers AXIS Defendants, in connection with the procurement and

underwriting of insurance policies for the insured, Greentopia. Specifically, this matter concerns

the negligent and/or intentional acts and omissions of the aforementioned parties in underwriting

coverage and the insurers' subsequent bad faith denial of coverage.

2.     Greentopia asserts claims against CLI, the RT Defendants, and the AXIS

Defendants for their collective failure to procure the requested insurance coverage, their issuance

of a false and misleading certificate of insurance, and the insurers' wrongful denial of coverage

for claims within the applicable policy limits, whether by negligence, recklessness, or willful

misconduct.

## The Parties & Jurisdiction

3.     Greentopia is a New Jersey corporation with its principal place of business at 85

Porete Avenue, North Arlington, New Jersey 07031.

4.     CLI is a New York corporation acting as an insurance agent and having its principal

place of business at 16 West 32nd Street, New York, New York 10001.

5.     CLI is a surplus lines agent within the meaning of N.J.S.A. § 17:22-6.63.

6.     RT Defendants are Delaware corporations acting as insurance brokers and having

their principal place of business at 1166 Avenue of the Americas, 18th Floor, New York, New York

10036, doing business as RT Specialty or Ryan Turner Specialty.

2

7.      AXIS Defendants are insurers – specifically surplus line insurers in New Jersey – incorporated in various states and having a principal place of business at 10000 Avalon Boulevard, Suite 200, Alpharetta, Georgia 30009 and also at 1166 Avenue of the Americas, 17th Floor, New York, New York 10036 (one floor below RT Defendants' place of business), doing business as "AXIS Surplus Insurance Company."

8.      AXIS Defendants are also registered with the National Association of Insurance Commissioners ("NAIC") as "AXIS Specialty Ins Co & Affil." with NAIC number 56; as "AXIS Specialty Ins Co" with NAIC number 15610; "AXIS Surplus Ins Co" with NAIC number 26620; and "AXIS Ins Co" with NAIC number 37273. All these registered AXIS Defendants are within the AXIS Capital Group, with NAIC group number 3416.

9.      AXIS Defendants are insurance companies registered with the State of New Jersey Department of Banking & Insurance as Licensed Insurance Carriers, registered as "AXIS Insurance Company" with NAIC number 37273 and as "AXIS Specialty Insurance Company" with NAIC number 15610.

10.     AXIS Defendants are unauthorized insurer(s) within the meaning of N.J.S.A. § 17:22-6.63 and, as such, this action may be brought against them upon the grounds and in accordance with the procedures provided in the Unauthorized Insurer's Process Act, N.J.S.A. § 17:51-1 et seq.

11.     ABC Corps. 1-10 are entities not currently known to and/or identifiable by Plaintiff which may be liable for the claims asserted herein, as being the insurance agent, insurance broker, or insurer, or the parent corporation, subsidiary, or affiliate thereof, or through contractual or business arrangements with those entities, including but not limited to any entities relating to and/or bearing the names "RT," "RSG" or "AXIS."

3

## Relationship Between the Parties

12.     Since 2017, Greentopia has retained CLI, an insurance agent, to procure insurance coverage adequate to address the risks inherent in its business operations, including but not limited to general commercial liability and pollution liability insurance.

13.     In or around September 2023, Greentopia expressly requested that CLI obtain commercial general liability insurance with policy limits of $500,000 and pollution liability insurance with policy limits of $1,000,000.

14.     In response to Greentopia's request, CLI engaged the services of the RT Defendants, acting as insurance brokers, to solicit and obtain appropriate insurance coverage from a qualified insurer.

15.     RT Defendants returned to CLI with a policy of desired insurance coverage with AXIS Defendants, an insurer.

16.     Thereafter, the RT Defendants returned to CLI with a proposed insurance policy underwritten by the AXIS Defendants, which purported to meet the coverage specifications requested by Greentopia.

17.     Based on the representations made by RT Defendants and AXIS Defendants, CLI issued a Certificate of Liability Insurance ("COI") to Greentopia for Policy No. EMP23003883-02. The COI affirmatively represented that the policy provided, among other coverages, the following:

- General Liability – Commercial General Liability - Damage to Rented Premises (Ea[ch] occurrence): $500,000
- Environmental Pollution Liability - $1,000,000 Occurrence // $2,000,000 Aggregate

**The April 18, 2025 The Fire and Oil Leak and the Submission of Insurance Claims**

18.     On or about April 18, 2025, Greentopia experienced a significant fire at its insured business premises located at 85 Porete Avenue, North Arlington, New Jersey 07031.

19.     The fire occurred during the course of Greentopia's regular business operations, specifically during the unloading of used cooking oil from a delivery truck into storage tanks, containers, and/or reservoirs situated on the premises.

20.     As a result of the extensive fire damage sustained, the Borough of North Arlington issued a formal "Notice of Imminent Hazard," directing that the damaged structures be immediately demolished due to public safety concerns.

21.     The fire compromised the structural integrity of the oil tanks and containers, resulting in a discharge of oil that permeated the ground and entered a nearby waterway, causing environmental contamination.

22.     Due to the nature and extent of the environmental hazard posed by the spill, the United States Environmental Protection Agency ("EPA") and the U.S. Department of Homeland Security became involved in the oversight of the remediation process.

23.     Greentopia promptly retained Ken's Marine Service, Inc. ("KMSI"), a remediation contractor recommended by an EPA official, to begin immediate response and cleanup efforts.

24.     Greentopia initially paid KMSI $20,000 as a down payment for remediation services and subsequently remitted an additional $40,000 toward ongoing cleanup efforts.

25.     On April 21, 2025, Greentopia notified AXIS Defendants of the incident and formally submitted a claim for coverage under Policy No. EMP23003883-02.

26.     That same day, AXIS Defendants requested the name of the remediation contractor retained by Greentopia, which was provided as KMSI.

27.     On April 22, 2025, AXIS Defendants responded that they were in the process of reviewing the applicability of coverage under the policy and informed Greentopia that they had retained Trident Environmental to assist with evaluating the discharge of pollutants and the environmental consequences thereof.

28.     Beginning on or about April 23, 2025, Trident Environmental – acting on behalf of AXIS Defendants – engaged with the EPA and contested the scope of the remediation efforts, asserting that the EPA's proposed scope was excessive and should be curtailed or carried out in an alternative manner.

29.     On April 29, 2025, AXIS Defendants again stated that their review of coverage under Policy No. EMP23003883-02 was ongoing, and they requested that Greentopia provide a copy of its lease agreement with the property owner, Thomas Levchak.

30.     On May 1, 2025, AXIS Defendants issued a written response via email to Greentopia, concluding their coverage review. In that correspondence, AXIS Defendants stated, among other things, that they were disclaiming coverage under Policy No. EMP23003883-02 for the fire and resulting pollution event. The denial was premised on AXIS Defendants' interpretation of various policy exclusions and limitations, including but not limited to alleged deficiencies in the scope of covered operations and purported exclusions for pollution-related damage:

31.     In their May 1, 2025 denial email, AXIS Defendants asserted that the Commercial General Liability coverage under Policy No. EMP23003883-02 was inapplicable. Specifically, AXIS Defendants contended that the Commercial General Liability coverage did not extend to the property damage arising from the April 18, 2025 fire, citing certain exclusions and limitations within the policy. The AXIS Defendants relied on exclusions related to pollution, damage to

property owned or occupied by the insured, and alleged that the loss fell outside the scope of a covered "occurrence" as defined by the policy:

32.     In the same May 1, 2025 denial email, AXIS Defendants further asserted that coverage under the Contractor Pollution Liability coverage of Policy No. EMP23003883-02 was inapplicable. The AXIS Defendants asserted that the pollution event did not arise from "covered operations" as defined in the policy because pollutants impacted "soils and groundwater at, on and around the Insured Premises and not a job site."

33.     AXIS Defendants disclaimed all obligations to indemnify Greentopia for the environmental remediation costs or related damages resulting from the April 18, 2025 fire:

34.     In response to AXIS Defendants' informal denial of coverage, Greentopia engaged a separate insurance agency, Econoworld Agency, Inc., to assist in disputing the coverage determination.

35.     On or about May 7, 2025, Econoworld contacted the AXIS Defendants to request clarification regarding the term "job site," which appeared central to AXIS Defendants' denial rationale. Econoworld also asserted that the fire incident plainly fell within the scope of "covered operations" as defined in the Contractor Pollution Liability policy.

36.     On May 8, 2025, AXIS Defendants responded by stating: "AXIS is reviewing your comments below and taking them under advisement."

37.     In the interim, Trident Environmental – retained by the AXIS Defendants – continued efforts to reduce remediation costs by proposing alternative methods and limiting the scope of the cleanup. However, Trident failed to conduct actual on-site remediation.

38.     As a result, on May 6, 2025, the EPA issued a formal notice stating that Greentopia's contractor's response was "unsatisfactory," and that, effective immediately, the EPA would take control of the remediation.

39.     The EPA-directed remediation efforts are significantly more expensive than private remediation; such government-directed cleanups routinely result in costs doubling or even tripling those of comparable private efforts.

40.     AXIS Defendants not only obstructed Greentopia's good faith efforts to remediate the environmental damage using its retained contractor, KMSI, but also triggered significantly higher remediation expenses by effectively forcing EPA intervention—all while maintaining their denial of coverage under the Contractor Pollution Liability policy.

41.     Following its withdrawal from the remediation effort, KMSI issued an invoice dated May 12, 2025, reflecting remediation costs incurred to date totaling $601,835.80.

42.     On May 11, 2025, CLI sent an email to AXIS Defendants disputing the denial of coverage and urging reconsideration in light of the mounting cleanup costs and regulatory involvement.

43.     On May 12, 2025, CLI sent a follow-up email reiterating the objections set forth in the prior day's correspondence.

44.     On May 16, 2025, CLI issued yet another follow-up email, requesting AXIS Defendants' prompt attention to the matter.

45.     On May 22, 2025, CLI sent a fourth email, emphasizing that the matter was time-sensitive due to the ongoing involvement of federal and state regulatory agencies and the continued accrual of remediation costs.

46.     AXIS Defendants failed to substantively respond to the correspondence from both Econoworld Agency and CLI. Instead, AXIS Defendants internally reassigned the matter to a new claims representative without providing notice or explanation to Greentopia.

47.     On June 17, 2025, CLI sent an email to AXIS Defendants' newly assigned representative, referencing KMSI's remediation bill and again emphasizing the urgency of the matter given the EPA's continued oversight and escalating expenses.

48.     On June 26, 2025, AXIS Defendants issued a final written communication reaffirming their denial of coverage. AXIS Defendants reiterated that the incident was not covered under the policy because Greentopia's principal place of business did not qualify as a "job site," and because the fire occurred during the transfer of recycled oil from a delivery truck to on-site storage tanks – an activity AXIS Defendants deemed to fall outside the scope of "covered operations" under the Contractor Pollution Liability policy.

### Facts Concerning the Procurement of the Insurance Policy

49.     On or about October 19, 2017, Greentopia requested that CLI procure a commercial general liability insurance policy providing coverage of $300,000 for damage to rented premises.

50.     That same day, CLI issued a Certificate of Insurance to Greentopia, indicating that such coverage had been procured in accordance with Greentopia's request.

51.     On or about July 18, 2018, following a change in ownership of its leased premises, Greentopia requested that CLI procure an updated commercial general liability insurance policy with a coverage limit of $500,000 for damage to rented premises.

52.     On the same day, CLI issued a revised Certificate of Insurance reflecting the requested $500,000 limit for damage to rented premises.

53.     Until November 2023, Greentopia maintained pollution liability insurance through Tokyo Marine Specialty Insurance Company, with a policy limit of $1,000,000, which expressly included coverage for both on-site and off-site contamination events.

54.     In or around August 2023, Greentopia requested that CLI procure a comparable insurance policy that would include pollution liability coverage consistent with its prior policy..

55.     On August 24, 2023, CLI provided a formal quote for the requested coverage. The quote expressly stated that the pollution liability insurance would include coverage for "on site, off site & transportation contamination."

56.     On August 29, 2023, Greentopia tendered payment for the quoted coverage to CLI.

57.     On August 30, 2023, CLI issued a Certificate of Insurance confirming issuance of the policy under Policy No. EMP23003883-01, effective from September 28, 2023 through September 28, 2024. The certificate included coverage for commercial general liability with a $500,000 limit for damage to rented premises, and pollution liability coverage as represented.

58.     On or about September 23, 2024, CLI issued a renewal invoice for the same policy. The invoice expressly indicated that the pollution liability coverage included "onsite, off site & transportation contamination."

59.     Greentopia paid the $5,300 initial deposit for the policy renewal on September 26, 2024, and remitted the remaining balance of $12,618.00 on November 1, 2024.

60.     Following receipt of payment, CLI issued a renewed Certificate of Insurance for Policy No. EMP23003883-02, effective from September 28, 2024 through September 28, 2025. The certificate confirmed coverage limits of $500,000 for damage to rented premises and $1,000,000 for environmental pollution liability.

61.    Based on the representations made by CLI through the certificates of insurance and renewal documentation, Greentopia reasonably believed – and did in fact believe – that it held valid insurance coverage, effective through September 28, 2025, which included: (a) $500,000 for damage to rented premises; and (b) $1,000,000 for environmental pollution liability, expressly covering incidents occurring onsite, offsite, and during the transportation of recycled cooking oil.

**Insurance Coverage Applications and Policy Documents**

62.    Relevant to this action, CLI procured on behalf of Greentopia two primary insurance policies through RT Defendants, who acted as the insurance broker: Policy No. EMP23003883-01, effective from September 28, 2023, to September 28, 2024, and Policy No. EMP23003883-02, effective from September 28, 2024, to September 28, 2025

63.    Concurrently, CLI also procured for Greentopia excess liability coverage in the form of umbrella policies – Policy No. EMX23001171-01, effective from September 28, 2023, to September 28, 2024, and Policy No. EMX23001171-02, effective from September 28, 2024, to September 28, 2025 – again through RT Defendants acting as insurance broker.

64.    In or around August 2023, Greentopia specifically requested that CLI procure a new insurance policy that included environmental pollution liability coverage that is consistent with the scope of coverage Greentopia previously maintained with Tokyo Marine Specialty Insurance Company.

65.    In response to this request, CLI contacted RT Defendants to obtain the requested policy terms and coverages.

66.    On August 21, 2023, RT Defendants provided CLI with a quote that purported to include the requested environmental pollution liability coverage.

67.    On August 22, 2023, CLI emailed RT Defendants with a specific inquiry, stating as follows:

> Please confirm:
> Pollution liability including on site, off site & transportation contamination?

68.    RT Defendants did not respond to CLI's request for confirmation and did not otherwise clarify whether the quoted coverage included pollution liability arising from on-site, off-site, and transportation-related contamination.

69.    Nevertheless, the policy documents ultimately issued in connection with Policy No. EMP23003883-01 included a "Transportation of Cargo – Pollution Endorsement" ("Endorsement"), which contained the following provision:

> This endorsement modifies insurance provided under the following:

> **CONTRACTORS POLLUTION LIABILITY COVERAGE**

> In consideration of an additional premium in the amount of $INCLUDED, it is hereby agreed that Exclusions H and Exclusion I shall not apply to a POLLUTION EVENT which:
> i) result from the release from a COVERED AUTO and emanating from the TRANSPORTED CARGO.
> ii) occur during loading or unloading operations or;
> iii) commence during the transportation of YOUR PRODUCT or wastes by a CARRIER; and
> iv) result in BODILY INJURY, PROPERTY DAMAGE, or CLEANUP COSTS during the transportation of YOUR PRODUCT or wastes; and
> v) commence on or after the inception of this policy.

70.    The Endorsement contained within the issued policy includes an exception to certain exclusions. Specifically, the Endorsement provides that pollution events falling within any one or more of the enumerated categories (i) through (v) are affirmatively covered under the policy.

71.    On or about August 29, 2023, CLI submitted a commercial insurance application on behalf of Greentopia, expressly requesting a $500,000 policy limit for "damage to rented premises."

72.    On the same day, RT Defendants negligently furnished CLI with a policy binder for Policy No. EMP23003883-01 that provided for only a $100,000 limit for "Damage to Premises Rented to You," contrary to the coverage requested in the application. At the same time, RT Defendants also provided a binder for policy number EMX23001171-01.

73.    Concurrently, RT Defendants also issued a policy binder for the umbrella Policy No. EMX23001171-01.

74.    On or about August 30, 2023, despite the underlying binder providing only $100,000 in coverage, CLI negligently or intentionally issued a Certificate of Insurance to Greentopia that falsely represented a higher policy limit of $500,000 for "damage to rented premises."

75.    Accompanying the erroneous Certificate of Insurance, CLI also issued a "Deposit Paid Receipt" – which also functioned as an invoice for the remaining premium balance – stating that the pollution liability insurance included coverage for "onsite, offsite & transportation contamination," thereby reinforcing the belief that the policy reflected the terms Greentopia had requested and paid for.

76.    These same policies – Policy Nos. EMP23003883-01 and EMX23001171-01 – were subsequently renewed without material change as Policy Nos. EMP23003883-02 and EMX23001171-02, respectively.

77.    Once again, despite the renewed EMP23003883-02 policy documents indicating a $100,000 limit for "damage to rented premises," CLI issued a Certificate of Insurance to Greentopia representing that the coverage limit was $500,000, consistent with Greentopia's prior request and payment history.

**FIRST COUNT**
**DECLARATORY JUDGMENT**
**(Against AXIS Defendants)**

78.     Plaintiff repeats and realleges the allegations of all preceding paragraphs as though fully set forth at length herein verbatim.

79.     A valid and enforceable contract exists between Plaintiff and the AXIS Defendants, consisting of the insurance policies identified as Policy Nos. EMP23003883-02 and EMX23001171-02.

80.     Pursuant to the terms and conditions of said policies, Plaintiff has fully performed all of its contractual obligations, including but not limited to the timely payment of all required premiums.

81.     Under the Contractors Pollution Liability coverage under policy number EMP23001171-02, the AXIS Defendants agreed as follows:

> We will pay on YOUR behalf all sums in excess of the Deductible that YOU are legally obligated to pay as a result of a CLAIM for BODILY INJURY or PROPERTY DAMAGE caused by a POLLUTION EVENT resulting from COVERED OPERATIONS, provided that:
>
> (1) Such BODILY INJURY or PROPERTY DAMAGE occurs during the POLICY PERIOD;
> [….]

82.     Policy No. EMP23003883-02 defines a "POLLUTION EVENT" as "the discharge, dispersal, migration, seepage, release, or escape of any solid, liquid, gaseous or thermal irritant, contaminant, or pollutant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste, provided such conditions are not naturally present in the environment in the concentration or amounts discovered."

83.     The discharge of used or waste cooking oil from Greentopia's business premises constitutes a POLLUTION EVENT as defined in the policy.

84.     Policy No. EMP23003883-02 defines "PROPERTY DAMAGE" as, among others, "CLEAN UP COSTS" and "NATURAL RESOURCES DAMAGE."

85.     The policy defines "CLEAN UP COSTS" as the "necessary expenses incurred in the investigation, removal, and remediation (including associated monitoring, neutralization, immobilization, or disposal) of contaminated soil, surface water, groundwater, or other contamination."

86.     The costs and expenses incurred by Greentopia and payable to Ken's Marine Service, Inc. ("KMSI"), as mandated by the EPA, constitute CLEAN UP COSTS under the policy.

87.     The policy defines "NATURAL RESOURCE DAMAGES" to include, among other things, the "reasonable direct costs, including costs of assessment, associated with action necessary to restore (including replacement) the natural resource to its baseline condition prior to the POLLUTION EVENT."

88.     All remediation, restoration, and related requirements imposed on Greentopia by the EPA and the Department of Homeland Security constitute NATURAL RESOURCE DAMAGES under the policy.

89.     Policy No. EMP23003883-02 defines "COVERED OPERATIONS" as "those activities performed by [Greentopia] at a job site," but the term "job site" is not explicitly defined in the policy.

90.     Greentopia conducts its business operations, including (i) transporting used cooking oil from delivery trucks to on-site reservoirs, (ii) recycling the used oil, and (iii) transporting the recycled oil back onto delivery trucks, exclusively at its premises located at 85 Porete Avenue, North Arlington, New Jersey 07031.

91.     The property located at 85 Porete Avenue, North Arlington, New Jersey 07031 was Greentopia's job site and principal place of business at the time the POLLUTION EVENT occurred, and therefore qualifies as a covered location under the policy.

92.     The Contractor Pollution Liability coverage contains exclusions as follows, under Sections III(H) and (J):

> This policy does not apply to any CLAIMS, CLAIM EXPENSES or LOSSES resulting from or arising out of:
> [....]
> H. the ownership, entrustment, maintenance, use, operation, loading or unloading of any AUTOMOBILE, aircraft, vessel or rolling stock beyond the boundaries of the site at which the COVERED OPERATIONS are being conducted unless endorsed onto this policy;
>
> I. waste, contaminants, pollutants, or materials transported via AUTOMOBILE, aircraft, vessel, watercraft or railroad rolling stock beyond the boundaries of the site at which YOU are performing COVERED OPERATIONS for YOUR client;

93.     However, the Endorsement  limits these exclusions, and notwithstanding the exclusions in Section III(H) and (J), policy number EMP23001171-02 covers POLLUTION EVENTS which:

> i) result from the release from a COVERED AUTO and emanating from the TRANSPORTED CARGO.
> ii) occur during loading or unloading operations or;
> iii) commence during the transportation of YOUR PRODUCT or wastes by a CARRIER; and
> iv) result in BODILY INJURY, PROPERTY DAMAGE, or CLEANUP COSTS during the transportation of YOUR PRODUCT or wastes; and
> v) commence on or after the inception of this policy.

94.     Under the terms of the Endorsement, a "COVERED AUTO" is broadly defined to include any land motor vehicle, whether owned, leased, or not owned by the Plaintiff.

95.     The Endorsement defines "TRANSPORTED CARGO" as "goods, products or wastes carried by a COVERED AUTO," including those goods "during the loading and unloading to or from a COVERED AUTO, provided that the loading or unloading is performed by [Plaintiff]."

96. Accordingly, there exist no legitimate grounds for AXIS Defendants to deny Plaintiff's insurance claim under the Contractors Pollution Liability policy, as the pollution at issue was caused by, or occurred during, the loading or unloading of used cooking oil from delivery trucks – an activity expressly covered under the policy terms.

97. Furthermore, there are no valid grounds for AXIS Defendants to deny Plaintiff's claim for costs and expenses related to pollution arising from used cooking oil stored in reservoirs at Plaintiff's business premises, which leaked into the environment as a direct consequence of fire damage to those containers.

98. Nevertheless, AXIS Defendants have improperly denied Plaintiff's claim for insurance coverage and, despite Plaintiff's timely dispute of that denial through its agents Econoworld Agency, Inc. and CLI, AXIS Defendants have maintained and reinstated their denial of coverage.

99. Under the General Commercial Liability coverage under policy number EMP23001171-02, the AXIS Defendants agreed as follows:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.
> [….]
> b. This insurance applies to "bodily injury" and "property damage" only if:
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory."

100. Policy No. EMP23003883-02 defines "property damage" as "physical injury to tangible property, including all resulting loss of use of that property."

101. Policy No. EMP23003883-02 defines an "occurrence" as an accident, including continuous or repeated exposure to substantially the same general or harmful conditions.

102.    Policy No. EMP23003883-02 defines the "coverage territory" as "the United States of America" and its territories and possessions.

103.    The General Commercial Liability coverage contains exclusions for "'property damage' arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants.'

104.    However, the damage to the real estate located at 85 Porete Avenue, North Arlington, New Jersey 07031 was caused by fire and not by pollutants.

105.    Accordingly, the fire damage to the real estate premises, as well as Plaintiff's losses relating to the loss of use of the premises, fall within the scope of coverage under the General Commercial Liability policy, Policy No. EMP23003883-02.

106.    Notwithstanding the foregoing, AXIS Defendants have denied Plaintiff's claim for insurance coverage for the damages to the rented premises..

107.    To the extent that any property damage is caused by pollutants, such damage is covered under the Contractor Pollution Liability coverage.

108.    AXIS Defendants have failed to perform their contractual obligations under Policy No. EMP23003883-02 by wrongfully denying Plaintiff's claims for coverage.

109.    As a direct and proximate result of AXIS Defendants' failure to honor their contractual obligations, Plaintiff has incurred and continues to incur substantial expenses for the remediation of pollution and is at risk of claims and litigation by, among others, the EPA, the Department of Homeland Security, KMSI, and other entities not presently known but potentially involved in the remediation process.

110.    Plaintiff is entitled to a declaratory judgment that AXIS Defendants are obligated to provide insurance coverage under Policy No. EMP23003883-02 up to the policy limit of

$1,000,000 and, additionally, under the umbrella policy No. EMX23001171-02 up to $4,000,000 for all PROPERTY DAMAGE and CLAIM EXPENSES resulting from the discharge of used cooking oil that caused and/or was caused by the fire occurring on or about April 18, 2025.

## SECOND COUNT
### Breach of Contract
### (Against AXIS Defendants)

111.    Plaintiff repeats and realleges the allegations of all preceding paragraphs as though fully set forth at length herein verbatim.

112.    A valid and enforceable contract exists between Plaintiff and AXIS Defendants, consisting of the insurance policies identified as Policy Nos. EMP23003883-02 and EMX23001171-02.

113.    Pursuant to the terms and conditions of said policies, Plaintiff fully performed all contractual obligations, including the timely payment of all premiums.

114.    AXIS Defendants breached their contractual duties by failing to provide coverage and refusing to perform their obligations under the insurance policies.

115.    As a direct and proximate result of AXIS Defendants' breach, Plaintiff has suffered and continues to suffer damages in an amount to be proven at trial, including but not limited to remediation costs, regulatory penalties, and other consequential damages.

## THIRD COUNT
### Negligence
### (Against RT Defendants and CIL)

116.    Plaintiff repeats and realleges the allegations of all preceding paragraphs as though fully set forth at length herein verbatim.

117.    RT Defendants and CLI owed a duty to act prudently, professionally, and with reasonable accuracy and competence toward Plaintiff in their capacities as insurance brokers,

agents, and/or producers, as imposed by common law, statute, and regulatory law, including but not limited to the New Jersey Insurance Producer Licensing Act, N.J.S.A. § 17:22A-26, et seq., the Surplus Lines Law, N.J.S.A. § 17:22-6.40, et seq., and other applicable laws and regulations governing the insurance industry in the State of New Jersey.

118.  Plaintiff requested that CLI procure, and CLI in turn requested that RT Defendants obtain, an insurance policy providing a $500,000 policy limit for damages to rented premises.

119.  Plaintiff further requested that CLI procure, and CLI in turn requested that RT Defendants obtain, an insurance policy providing a $1,000,000 policy limit for losses relating to pollution, specifically including coverage for pollution events occurring onsite, offsite, and during transportation of pollutants.

120.  In response to these requests, RT Defendants procured for CLI, and CLI procured for Plaintiff, insurance policies that were represented as containing the requested policy limits and coverages.

121.  Consistent with these representations, CLI issued Certificates of Insurance to Plaintiff reflecting the requested coverage limits, which was further evidenced by CLI's issuance of invoices demanding payment of premiums for said insurance policies.

122.  Contrary to the representations made in the Certificates of Insurance, the underlying insurance policy documents provided coverage of only $100,000 for damages to rented premises.

123.  Contrary to CLI's and RT Defendants' representations, and as asserted by AXIS Defendants, the procured insurance policies did not cover losses caused by pollution events occurring onsite, offsite, or during transportation.

124.    CLI and RT Defendants breached the duties they owed to Plaintiff by negligently procuring policies that failed to conform to Plaintiff's explicit requests and by making false or misleading representations regarding the scope and limits of coverage provided..

125.    As a direct and proximate result of the foregoing breaches, Plaintiff has suffered damages in an amount to be determined at trial.

**FOURTH COUNT**
**Indemnification/Contribution**
**(Against All Defendants)**

126.    Plaintiff repeats and realleges the allegations of all preceding paragraphs as though fully set forth at length herein verbatim.

127.    As a direct and proximate result of the foregoing wrongful acts and omissions by Defendants, Plaintiff has been subjected to claims for monies and reimbursement demands by its landlord, Thomas Levchak, Ken's Marine Service, Inc. ("KMSI"), and various governmental agencies for costs and expenses associated with the remediation and/or repair of pollution and damages caused by the fire on April 18, 2025 – liabilities that Plaintiff would not otherwise have been responsible for but for Defendants' breaches of their agreements and duties.

128.    In particular, AXIS Defendants interfered with Plaintiff's ability to comply with mandates issued by the EPA and the Department of Homeland Security by assigning their agent, Trident Environmental, ostensibly to "assist" with remediation, but in practice effectively halted the remediation process, thereby forcing the EPA to assume direct control over the remediation efforts.

129.    Upon information and belief, the costs of remediation increase two to threefold when the EPA takes over or manages the remediation process, as opposed to when such remediation is conducted under supervision without direct EPA involvement.

130.    There is a pending claim for money by KMSI for $601,835.80.

131.    Plaintiff anticipates a claim from its landlord, Thomas Levchak, for repair costs related to the rented premises destroyed by the fire.

132.    The precise amount of the landlord's claim is presently unknown and remains to be determined.

133.    Plaintiff further anticipates claims and/or assessments of damages and costs from the EPA and/or the Department of Homeland Security.

134.    The exact amounts of any such governmental claims or assessments are currently undetermined.

135.    The foregoing actual and anticipated liabilities, penalties, and other financial obligations imposed upon Plaintiff, if any, were directly caused by the failure of RT Defendants and CLI to procure insurance policies consistent with Plaintiff's expressed requests and/or the breach of the insurance contracts by AXIS Defendants, specifically Policies Nos. EMP23003883-02 and EMX23001171-02.

136.    Accordingly, Defendants are liable to indemnify and/or contribute toward Plaintiff's financial obligations to the extent Plaintiff is found liable for any sums relating to the fire incident of April 18, 2025.

### FIFTH COUNT
**Negligent Misrepresentation**
**(Against CLI)**

137.    Plaintiff repeats and realleges the allegations of all preceding paragraphs as though fully set forth at length herein verbatim.

138.    The insurance binder and policy documents for Policy Nos. EMP23003883-01 and EMP23003883-02, provided by RT Defendants to CLI, reflected a policy limit of $100,000 for damage to rented premises.

139.    Despite the foregoing, CLI incorrectly represented to Plaintiff, both orally and in the Certificates of Insurance issued to Plaintiff, that the policy limits for damage to rented premises under Policy Nos. EMP23003883-01 and -02 were $500,000.

140.    Plaintiff justifiably relied upon CLI's representation regarding the policy limits for damage to rented premises.

141.    Additionally, CLI represented to Plaintiff that the Contractor Pollution Liability coverage under Policy Nos. EMP23003883-01 and -02 included coverage for pollution events occurring onsite, offsite, and during transportation.

142.    According to AXIS Defendants, Policy Nos. EMP23003883-01 and -02 do not provide coverage for pollution events occurring at Plaintiff's principal place of business located at 85 Porete Avenue, North Arlington, New Jersey 07031.

143.    According to AXIS Defendants, the representations made by CLI concerning the scope of the Contractor Pollution Liability coverage under said policies were inaccurate.

144.    Plaintiff justifiably relied on CLI's statements regarding the scope of the Contractor Pollution Liability coverage under Policy Nos. EMP23003883-01 and -02..

145.    In reliance on these representations, Plaintiff remitted full payment of the insurance premiums requested and/or invoiced by CLI.

146.    In further reliance on these representations, Plaintiff maintained the subject policies as procured and represented by CLI.

147.    As a direct and proximate result of Plaintiff's reliance on CLI's misrepresentations, Plaintiff has suffered damages, including but not limited to the difference in coverage between the represented and actual policy limits for damage to rented premises, and the lack of coverage for pollution events at Plaintiff's business premises, in an amount to be determined at trial.

### SIXTH COUNT
**Reformation of Contract**
**(Against AXIS Defendants)**

148.    Plaintiffs repeat and reallege the allegations of all preceding paragraphs as though fully set forth at length herein verbatim.

149.    The insurance premium paid by Plaintiff to CLI for Policy Nos. EMP23003883-02 and EMX23001171-02 was, in substantial part, transmitted to and accepted by AXIS Defendants as consideration for the issuance of the subject insurance coverage.

150.    In exchange for said consideration, AXIS Defendants agreed and were contractually obligated to provide insurance coverage for losses arising from pollution events, including events such as the one that occurred as a direct result of the April 18, 2025 fire, pursuant to Policy Nos. EMP23003883-02 and EMX23001171-02.

151.    AXIS Defendants have refused to provide coverage for Plaintiff's losses relating to the pollution caused by the April 18, 2025 fire, basing their denial on strained, unreasonable, and untenable interpretations of the terms contained in Policy No. EMP23003883-02.

152.    AXIS Defendants' interpretation of the relevant policy terms effectively renders the coverage illusory, denying Plaintiff the benefit of the very coverage it sought and paid for – namely, protection against pollution losses occurring at its business premises during the normal course of its operations.

153.    The language of Policy No. EMP23003883-02 was drafted unilaterally by AXIS Defendants and presented to Plaintiff on a take-it-or-leave-it basis, without any opportunity for negotiation, and therefore constitutes a contract of adhesion.

154.    In light of the ambiguous and misleading terms of the policy and Plaintiff's reasonable reliance on the representations of coverage made by AXIS Defendants and their agents, reformation of the contract is warranted to conform the policy terms to Plaintiff's reasonable expectations as an insured.

## SEVENTH COUNT
## STATUTORY CLAIM PURSUANT TO N.J.S.A. § 17:22-6.63
### (Against AXIS Defendants)

155.    Plaintiffs repeat and reallege the allegations of all preceding paragraphs as though fully set forth at length herein verbatim.

156.    Pursuant to N.J.S.A. 17:22-6.63, an unauthorized insurer may be sued upon a certificate of insurance issued by a duly licensed surplus line agent.

157.    The AXIS Defendants are unauthorized insurers within the meaning of N.J.S.A. 17:22-6.63.

158.    CLI acted as a surplus line agent authorized to procure insurance coverage through unauthorized insurers, including AXIS Defendants.

159.    Accordingly, AXIS Defendants are bound by the policy terms and coverage limits as set forth in the Certificates of Insurance issued by CLI to Plaintiff, including but not limited to Policy Nos. EMP23003883-02 and EMX23001171-02.

160.    Plaintiff is therefore entitled to a declaratory judgment and an order directing AXIS Defendants to provide coverage consistent with the representations made in the Certificate of Insurance – namely, coverage up to $500,000 for damages to rented premises under Policy No.

EMP23003883-02, and up to $4,000,000 in umbrella coverage under Policy No. EMX23001171-02.

**EIGHTH COUNT**
**STATUTORY CLAIM PURSUANT TO N.J.S.A. § 17:22-6.50 and -6.52**
**(Against CLI)**

161.    Plaintiffs repeat and reallege the allegations of all preceding paragraphs as though fully set forth at length herein verbatim.

162.    Pursuant to N.J.S.A. § 17:22-6.50, a surplus line agent is prohibited from issuing a certificate of insurance unless the agent has received confirmation from the surplus line insurer that the insurance coverage described in the certificate has, in fact, been granted by the insurer.

163.    In violation of N.J.S.A. § 17:22-6.50, CLI issued a Certificate of Insurance to Plaintiff representing that Policy No. EMP23003883-02 provided a policy limit of $500,000 for damage to rented premises, when in fact the underlying policy issued by AXIS Defendants did not contain such a coverage limit.

164.    Pursuant to N.J.S.A. § 17:22-6.52, CLI was required to include, in writing or print, on the face of the certificate of insurance: (a) the name and license information of the insurance broker, and (b) the required statutory disclosure stating: "This Insurance is Issued Pursuant to the New Jersey Surplus Lines Law."

165.    CLI failed to include the required broker information and statutory disclosure on the certificate of insurance it issued to Plaintiff.

166.    As a direct result of CLI's statutory violations, Plaintiff was misled as to the actual scope and authority of the insurance coverage it purchased, and was deprived of material information to which it was entitled under law. Plaintiff has consequently suffered damages, including but not limited to uninsured losses, in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Greentopia US, Inc., seeks judgment against Defendants, as follows:

a)     Declaring that Policy No. EMP23003883-02 is reformed to reflect the reasonable expectations of the insured, Plaintiff, such that the General Commercial Liability coverage extends to losses sustained at the real property located at 85 Porete Avenue, North Arlington, New Jersey 07031 – including damage to the structure, fixtures, equipment, improvements, and other tangible property – resulting from the fire of April 18, 2025;

b)     Declaring that Policy No. EMP23003883-02 is reformed to reflect the reasonable expectations of the insured, Plaintiff, such that the Contractor Pollution Liability coverage extends to losses arising from the discharge of used cooking oil at or around Plaintiff's principal place of business at 85 Porete Avenue, North Arlington, New Jersey 07031, including any affected areas identified by the U.S. Environmental Protection Agency and/or the Department of Homeland Security;

c)     Declaring that the General Commercial Liability coverage under Policy No. EMP23003883-02 applies to all property damage sustained at or to the premises located at 85 Porete Avenue, North Arlington, New Jersey 07031, including damage to all equipment, fixtures, improvements, and tangible property situated therein on April 18, 2025;

d)     Declaring that the General Commercial Liability coverage under policy number EMP23003883-02 is applicable with a policy limit of $500,000;

e)     Declaring that the umbrella coverage under Policy No. EMX23001171-02 applies to the April 18, 2025 fire incident and extends coverage for property damage up to a policy limit of $4,000,000;

f)       Declaring that the Contractor Pollution Liability coverage under Policy No. EMP23003883-02 applies to the pollution event that occurred at or around 85 Porete Avenue, North Arlington, New Jersey 07031, including any areas identified by the U.S. Environmental Protection Agency and/or the Department of Homeland Security as having been affected;

g)       Declaring that the Contractor Pollution Liability coverage under Policy No. EMP23003883-02 applies to all reasonable and necessary costs and expenses incurred by Plaintiff since April 18, 2025, relating to the pollution event, except to the extent of any deductible applicable under the policy;

h)       Declaring that the umbrella coverage under Policy No. EMX23001171-02 applies to the pollution event that occurred at or around 85 Porete Avenue, North Arlington, New Jersey 07031 – including any areas impacted as identified by the U.S. Environmental Protection Agency and/or the Department of Homeland Security—and covers all reasonable and necessary costs and expenses incurred by Plaintiff beginning on April 18, 2025, up to the policy limit of $4,000,000, less any deductible;

i)       Ordering Defendants to indemnify and hold harmless Plaintiff against any and all claims, demands, actions, costs, expenses, liabilities, or damages asserted against Plaintiff in connection with the April 18, 2025 fire and resulting pollution.

j)       Ordering RT Defendants and CLI to indemnify Plaintiff for all losses incurred as a result of their negligence, errors, and/or misrepresentations in connection with the procurement and representation of the insurance policies at issue;

k)       Awarding Plaintiff compensatory, consequential, incidental, expectation, and exemplary damages, including pre-judgment and post-judgment interest;

l)      Holding all Defendants jointly and severally liable for the full extent of Plaintiff's damages;

m)      Awarding Plaintiff its reasonable attorneys' fees, litigation expenses, and costs of suit, to the extent permitted by law, contract, or equity; and for such other, further or different relief as the Court may deem equitable, just and fair.

## DESIGNATION OF TRIAL COUNSEL PURSUANT TO R. 4:25-4

Sean S. Kwak, Esq., is hereby designated as trial counsel for Plaintiff.

## JURY DEMAND PURSUANT TO R.R. 1:8-1(b) & 4:35-1(a)-(b)

Plaintiff hereby respectfully demands a trial by jury as to all issues so triable.

Dated: July 3, 2025

**Kim, Lim & Partners**
*Attorneys for Plaintiff*

_____/s/ Sean S. Kwak_____
Sean S. Kwak, Esq.


## CERTIFICATION PURSUANT TO R. 1:38-7(c)(2)

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

Dated: July 3, 2025

**Kim, Lim & Partners**
*Attorneys for Plaintiff*

_____/s/ Sean S. Kwak_____
Sean S. Kwak, Esq.


## CERTIFICATION PURSUANT TO R. 4:5-1(b)(2)

I hereby certify that the foregoing matter in controversy is the subject of no other action pending in any court, nor of a pending arbitration proceeding, and that no other action or arbitration

proceeding is contemplated.  I further hereby certify that there are no other parties who should be

joined in this action, although Plaintiffs reserve their right to seek to amend the Complaint to add

such parties as discovery may reveal.

Dated: July 3, 2025

**Kim, Lim & Partners**
*Attorneys for Plaintiff*

_____/s/ Sean S. Kwak_____
Sean S. Kwak, Esq.

# Civil Case Information Statement

## Case Details: BERGEN | Civil Part Docket# L-004453-25

**Case Caption:** GREENTOPIA US, INC.   VS CHOONG LEE INSURANCE , I

**Case Initiation Date:** 07/03/2025

**Attorney Name:** JOSHUA SEOUNG YOUNG LIM

**Firm Name:** KIM, LIM & PARTNERS

**Address:** 460 BERGEN BLVD STE 305 PALISADES PARK NJ 07650

**Phone:** 2015857400

**Name of Party:** PLAINTIFF : Greentopia US, INC.

**Name of Defendant's Primary Insurance Company** (if known): Unknown

**Case Type:** OTHER INSURANCE CLAIM (INCLUDING DECLARATORY JUDGMENT ACTIONS)

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?**  NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Does this case involve claims related to COVID-19?** NO

**Are sexual abuse claims alleged by: Greentopia US, INC.?** NO

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE

### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Business

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
**If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
**If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO **Medical Debt Claim?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

07/03/2025
Dated

/s/ JOSHUA SEOUNG YOUNG LIM
Signed

# **EXHIBIT B**

**Kim, Lim & Partners**
Sean S. Kwak, Esq. (Bar ID.: 020422004)
460 Bergen Boulevard, Suite 305
Palisades Park, New Jersey 07650
Tel.: 201-585-7400
*Attorneys for Plaintiff*

| | |
|---|---|
| GREENTOPIA US, INC.,<br>                    Plaintiff,<br>v.<br><br>CHOONG LEE INSURANCE, INC.;<br>RT SPECIALTY,<br>        a/k/a RYAN SPECIALTY, LLC;<br>        a/k/a RSG SPECIALTY, LLC;<br>AXIS SURPLUS INSURANCE COMPANY;<br>and ABC CORP. 1-10;<br>                                    Defendants. | SUPERIOR COURT OF NEW JERSEY<br>BERGEN COUNTY – LAW DIVISION<br><br>DOCKET NO.:  **BER-L-004453- 25**<br><br>Civil Action<br><br>**AMENDED COMPLAINT<br>WITH JURY DEMAND** |

The plaintiff Greentopia US, Inc. ("Greentopia"), by and through their attorneys, Kim, Lim & Partners, by way of Complaint against the defendants Choong Lee Insurance, Inc. ("CLI"), RT Specialty (also known as Ryan Specialty, LLC; RSG Specialty, LLC; or RSG Insurance Services, LLC), ("RT Defendants"), and AXIS Surplus Insurance Company ("AXIS") hereby states as follows:

## Preliminary Statement

1.      This action arises from the wrongful conduct of the insurance agent CLI, the broker RT Defendants, and the insurer AXIS, in connection with the procurement and underwriting of insurance policies for the insured, Greentopia. Specifically, this matter concerns the negligent and/or intentional acts and omissions of the aforementioned parties in underwriting coverage and the insurers' subsequent bad faith denial of coverage.

2.      Greentopia asserts claims against CLI, the RT Defendants, and AXIS for their collective failure to procure the requested insurance coverage, their issuance of a false and misleading certificate of insurance, and the insurers' wrongful denial of coverage for claims

1

within the applicable policy limits, whether by negligence, recklessness, or willful misconduct.

## The Parties & Jurisdiction

3.      Greentopia is a New Jersey corporation with its principal place of business at 85 Porete Avenue, North Arlington, New Jersey 07031.

4.      CLI is a New York corporation acting as an insurance agent and having its principal place of business at 16 West 32nd Street, New York, New York 10001.

5.      CLI is a surplus lines agent within the meaning of N.J.S.A. § 17:22-6.63.

6.      RT Defendants are Delaware corporations acting as insurance brokers and having their principal place of business at 1166 Avenue of the Americas, 18th Floor, New York, New York 10036, doing business as RT Specialty or Ryan Turner Specialty.

7.      AXIS is an insurer– specifically a surplus line insurer in New Jersey – incorporated in various states and having a principal place of business at 10000 Avalon Boulevard, Suite 200, Alpharetta, Georgia 30009 and also at 11680 Great Oaks Way, Suite 500, Alpharetta, Georgia 30022, doing business as "AXIS Surplus Insurance Company."

8.      AXIS is registered with the National Association of Insurance Commissioners ("NAIC") as "AXIS Surplus Insurance Company" and bears an SBS Company Number 99306156, NAIC CoCode 26620, and a NAIC Group Number "3416 -AXIS Capital Grp."

9.      AXIS is an unauthorized insurer within the meaning of N.J.S.A. § 17:22-6.63 and, as such, this action may be brought against them upon the grounds and in accordance with the procedures provided in the Unauthorized Insurer's Process Act, N.J.S.A. § 17:51-1 et seq.

10.     ABC Corps. 1-10 are entities not currently known to and/or identifiable by Plaintiff which may be liable for the claims asserted herein, as being the insurance agent, insurance broker, or insurer, or the parent corporation, subsidiary, or affiliate thereof, or through

contractual or business arrangements with those entities, including but not limited to any entities relating to and/or bearing the names "RT," "RSG" or "AXIS."

### Relationship Between the Parties

11.      Since 2017, Greentopia has retained CLI, an insurance agent, to procure insurance coverage adequate to address the risks inherent in its business operations, including but not limited to general commercial liability and pollution liability insurance.

12.      In or around September 2023, Greentopia expressly requested that CLI obtain commercial general liability insurance with policy limits of $500,000 and pollution liability insurance with policy limits of $1,000,000.

13.      In response to Greentopia's request, CLI engaged the services of the RT Defendants, acting as insurance brokers, to solicit and obtain appropriate insurance coverage from a qualified insurer.

14.      RT Defendants returned to CLI with a policy of desired insurance coverage with AXIS, an insurer.

15.      Thereafter, the RT Defendants returned to CLI with a proposed insurance policy underwritten by AXIS, which purported to meet the coverage specifications requested by Greentopia.

16.      Based on the representations made by RT Defendants and AXIS, CLI issued a Certificate of Liability Insurance ("COI") to Greentopia for Policy No. EMP23003883-02. The COI affirmatively represented that the policy provided, among other coverages, the following:

- General Liability – Commercial General Liability - Damage to Rented Premises (Ea[ch] occurrence): $500,000
- Environmental Pollution Liability - $1,000,000 Occurrence // $2,000,000 Aggregate

3

**The April 18, 2025 The Fire and Oil Leak and the Submission of Insurance Claims**

17.    On or about April 18, 2025, Greentopia experienced a significant fire at its insured business premises located at 85 Porete Avenue, North Arlington, New Jersey 07031.

18.    The fire occurred during the course of Greentopia's regular business operations, specifically during the unloading of used cooking oil from a delivery truck into storage tanks, containers, and/or reservoirs situated on the premises.

19.    As a result of the extensive fire damage sustained, the Borough of North Arlington issued a formal "Notice of Imminent Hazard," directing that the damaged structures be immediately demolished due to public safety concerns.

20.    The fire compromised the structural integrity of the oil tanks and containers, resulting in a discharge of oil that permeated the ground and entered a nearby waterway, causing environmental contamination.

21.    Due to the nature and extent of the environmental hazard posed by the spill, the United States Environmental Protection Agency ("EPA") and the U.S. Department of Homeland Security became involved in the oversight of the remediation process.

22.    Greentopia promptly retained Ken's Marine Service, Inc. ("KMSI"), a remediation contractor recommended by an EPA official, to begin immediate response and cleanup efforts.

23.    Greentopia initially paid KMSI $20,000 as a down payment for remediation services and subsequently remitted an additional $40,000 toward ongoing cleanup efforts.

24.    On April 21, 2025, Greentopia notified AXIS of the incident and formally submitted a claim for coverage under Policy No. EMP23003883-02.

25.    That same day, AXIS requested the name of the remediation contractor retained

by Greentopia, which was provided as KMSI.

26.     On April 22, 2025, AXIS responded that they were in the process of reviewing the applicability of coverage under the policy and informed Greentopia that they had retained Trident Environmental to assist with evaluating the discharge of pollutants and the environmental consequences thereof.

27.     Beginning on or about April 23, 2025, Trident Environmental – acting on behalf of AXIS– engaged with the EPA and contested the scope of the remediation efforts, asserting that the EPA's proposed scope was excessive and should be curtailed or carried out in an alternative manner.

28.     On April 29, 2025, AXIS again stated that their review of coverage under Policy No. EMP23003883-02 was ongoing, and they requested that Greentopia provide a copy of its lease agreement with the property owner, Thomas Levchak.

29.     On May 1, 2025, AXIS issued a written response via email to Greentopia, concluding their coverage review. In that correspondence, AXIS stated, among other things, that they were disclaiming coverage under Policy No. EMP23003883-02 for the fire and resulting pollution event. The denial was premised on AXIS's interpretation of various policy exclusions and limitations, including but not limited to alleged deficiencies in the scope of covered operations and purported exclusions for pollution-related damage:

30.     In their May 1, 2025 denial email, AXIS asserted that the Commercial General Liability coverage under Policy No. EMP23003883-02 was inapplicable. Specifically, AXIS contended that the Commercial General Liability coverage did not extend to the property damage arising from the April 18, 2025 fire, citing certain exclusions and limitations within the policy. AXIS relied on exclusions related to pollution, damage to property owned or occupied by the

insured, and alleged that the loss fell outside the scope of a covered "occurrence" as defined by the policy:

31.    In the same May 1, 2025 denial email, AXIS further asserted that coverage under the Contractor Pollution Liability coverage of Policy No. EMP23003883-02 was inapplicable. AXIS asserted that the pollution event did not arise from "covered operations" as defined in the policy because pollutants impacted "soils and groundwater at, on and around the Insured Premises and not a job site."

32.    AXIS disclaimed all obligations to indemnify Greentopia for the environmental remediation costs or related damages resulting from the April 18, 2025 fire:

33.    In response to AXIS's informal denial of coverage, Greentopia engaged a separate insurance agency, Econoworld Agency, Inc., to assist in disputing the coverage determination.

34.    On or about May 7, 2025, Econoworld contacted AXIS to request clarification regarding the term "job site," which appeared central to AXIS's denial rationale. Econoworld also asserted that the fire incident plainly fell within the scope of "covered operations" as defined in the Contractor Pollution Liability policy.

35.    On May 8, 2025, AXIS responded by stating: "AXIS is reviewing your comments below and taking them under advisement."

36.    On July 22, 2025, AXIS finally responded, through its attorney Jay Lavroff, Esq. at Lindabury, McCormick, Estabrook & Cooper, P.C., reiterating AXIS's denial of coverage.

37.    In the interim, Trident Environmental – retained by AXIS– continued efforts to reduce remediation costs by proposing alternative methods and limiting the scope of the cleanup. However, Trident failed to conduct actual on-site remediation.

38.    As a result, on May 6, 2025, the EPA issued a formal notice stating that

Greentopia's contractor's response was "unsatisfactory," and that, effective immediately, the EPA would take control of the remediation.

39.    The EPA-directed remediation efforts are significantly more expensive than private remediation; such government-directed cleanups routinely result in costs doubling or even tripling those of comparable private efforts.

40.    AXIS not only obstructed Greentopia's good faith efforts to remediate the environmental damage using its retained contractor, KMSI, but also triggered significantly higher remediation expenses by effectively forcing EPA intervention—all while maintaining their denial of coverage under the Contractor Pollution Liability policy.

41.    Following its withdrawal from the remediation effort, KMSI issued an invoice dated May 12, 2025, reflecting remediation costs incurred to date totaling $601,835.80.

42.    On May 11, 2025, CLI sent an email to AXIS disputing the denial of coverage and urging reconsideration in light of the mounting cleanup costs and regulatory involvement.

43.    On May 12, 2025, CLI sent a follow-up email reiterating the objections set forth in the prior day's correspondence.

44.    On May 16, 2025, CLI issued yet another follow-up email, requesting AXIS's prompt attention to the matter.

45.    On May 22, 2025, CLI sent a fourth email, emphasizing that the matter was time-sensitive due to the ongoing involvement of federal and state regulatory agencies and the continued accrual of remediation costs.

46.    AXIS failed to substantively respond to the correspondence from both Econoworld Agency and CLI. Instead, AXIS internally reassigned the matter to a new claims representative without providing notice or explanation to Greentopia.

47.     On June 17, 2025, CLI sent an email to AXIS's newly assigned representative, referencing KMSI's remediation bill and again emphasizing the urgency of the matter given the EPA's continued oversight and escalating expenses.

48.     On June 26, 2025, AXIS issued a final written communication reaffirming their denial of coverage. AXIS reiterated that the incident was not covered under the policy because Greentopia's principal place of business did not qualify as a "job site," and because the fire occurred during the transfer of recycled oil from a delivery truck to on-site storage tanks – an activity AXIS deemed to fall outside the scope of "covered operations" under the Contractor Pollution Liability policy.

## Facts Concerning the Procurement of the Insurance Policy

49.     On or about October 19, 2017, Greentopia requested that CLI procure a commercial general liability insurance policy providing coverage of $300,000 for damage to rented premises.

50.     That same day, CLI issued a Certificate of Insurance to Greentopia, indicating that such coverage had been procured in accordance with Greentopia's request.

51.     On or about July 18, 2018, following a change in ownership of its leased premises, Greentopia requested that CLI procure an updated commercial general liability insurance policy with a coverage limit of $500,000 for damage to rented premises.

52.     On the same day, CLI issued a revised Certificate of Insurance reflecting the requested $500,000 limit for damage to rented premises.

53.     Until November 2023, Greentopia maintained pollution liability insurance through Tokyo Marine Specialty Insurance Company, with a policy limit of $1,000,000, which expressly included coverage for both on-site and off-site contamination events.

54.     In or around August 2023, Greentopia requested that CLI procure a comparable

8

insurance policy that would include pollution liability coverage consistent with its prior policy..

55.    On August 24, 2023, CLI provided a formal quote for the requested coverage. The quote expressly stated that the pollution liability insurance would include coverage for "on site, off site & transportation contamination."

56.    On August 29, 2023, Greentopia tendered payment for the quoted coverage to CLI.

57.    On August 30, 2023, CLI issued a Certificate of Insurance confirming issuance of the policy under Policy No. EMP23003883-01, effective from September 28, 2023 through September 28, 2024. The certificate included coverage for commercial general liability with a $500,000 limit for damage to rented premises, and pollution liability coverage as represented.

58.    On or about September 23, 2024, CLI issued a renewal invoice for the same policy. The invoice expressly indicated that the pollution liability coverage included "onsite, off site & transportation contamination."

59.    Greentopia paid the $5,300 initial deposit for the policy renewal on September 26, 2024, and remitted the remaining balance of $12,618.00 on November 1, 2024.

60.    Following receipt of payment, CLI issued a renewed Certificate of Insurance for Policy No. EMP23003883-02, effective from September 28, 2024 through September 28, 2025. The certificate confirmed coverage limits of $500,000 for damage to rented premises and $1,000,000 for environmental pollution liability.

61.    Based on the representations made by CLI through the certificates of insurance and renewal documentation, Greentopia reasonably believed – and did in fact believe – that it held valid insurance coverage, effective through September 28, 2025, which included: (a) $500,000 for damage to rented premises; and (b) $1,000,000 for environmental pollution

liability, expressly covering incidents occurring onsite, offsite, and during the transportation of recycled cooking oil.

### Insurance Coverage Applications and Policy Documents

62.     Relevant to this action, CLI procured on behalf of Greentopia two primary insurance policies through RT Defendants, who acted as the insurance broker: Policy No. EMP23003883-01, effective from September 28, 2023, to September 28, 2024, and Policy No. EMP23003883-02, effective from September 28, 2024, to September 28, 2025

63.     Concurrently, CLI also procured for Greentopia excess liability coverage in the form of umbrella policies – Policy No. EMX23001171-01, effective from September 28, 2023, to September 28, 2024, and Policy No. EMX23001171-02, effective from September 28, 2024, to September 28, 2025 – again through RT Defendants acting as insurance broker.

64.     In or around August 2023, Greentopia specifically requested that CLI procure a new insurance policy that included environmental pollution liability coverage that is consistent with the scope of coverage Greentopia previously maintained with Tokyo Marine Specialty Insurance Company.

65.     In response to this request, CLI contacted RT Defendants to obtain the requested policy terms and coverages.

66.     On August 21, 2023, RT Defendants provided CLI with a quote that purported to include the requested environmental pollution liability coverage.

67.     On August 22, 2023, CLI emailed RT Defendants with a specific inquiry, stating as follows:

> Please confirm:
> Pollution liability including on site, off site & transportation contamination?

68.     RT Defendants did not respond to CLI's request for confirmation and did not otherwise clarify whether the quoted coverage included pollution liability arising from on-site, off-site, and transportation-related contamination.

69.     Nevertheless, the policy documents ultimately issued in connection with Policy No. EMP23003883-01 included a "Transportation of Cargo – Pollution Endorsement" ("Endorsement"), which contained the following provision:

This endorsement modifies insurance provided under the following:

### CONTRACTORS POLLUTION LIABILITY COVERAGE

In consideration of an additional premium in the amount of $INCLUDED, it is hereby agreed that Exclusions H and Exclusion I shall not apply to a POLLUTION EVENT which:
i) result from the release from a COVERED AUTO and emanating from the TRANSPORTED CARGO.
ii) occur during loading or unloading operations or;
iii) commence during the transportation of YOUR PRODUCT or wastes by a CARRIER; and
iv) result in BODILY INJURY, PROPERTY DAMAGE, or CLEANUP COSTS during the transportation of YOUR PRODUCT or wastes; and
v) commence on or after the inception of this policy.

70.     The Endorsement contained within the issued policy includes an exception to certain exclusions. Specifically, the Endorsement provides that pollution events falling within any one or more of the enumerated categories (i) through (v) are affirmatively covered under the policy.

71.     On or about August 29, 2023, CLI submitted a commercial insurance application on behalf of Greentopia, expressly requesting a $500,000 policy limit for "damage to rented premises."

72.     On the same day, RT Defendants negligently furnished CLI with a policy binder for Policy No. EMP23003883-01 that provided for only a $100,000 limit for "Damage to

Premises Rented to You," contrary to the coverage requested in the application. At the same time, RT Defendants also provided a binder for policy number EMX23001171-01.

73.    Concurrently, RT Defendants also issued a policy binder for the umbrella Policy No. EMX23001171-01.

74.    On or about August 30, 2023, despite the underlying binder providing only $100,000 in coverage, CLI negligently or intentionally issued a Certificate of Insurance to Greentopia that falsely represented a higher policy limit of $500,000 for "damage to rented premises."

75.    Accompanying the erroneous Certificate of Insurance, CLI also issued a "Deposit Paid Receipt" – which also functioned as an invoice for the remaining premium balance – stating that the pollution liability insurance included coverage for "onsite, offsite & transportation contamination," thereby reinforcing the belief that the policy reflected the terms Greentopia had requested and paid for.

76.    These same policies – Policy Nos. EMP23003883-01 and EMX23001171-01 – were subsequently renewed without material change as Policy Nos. EMP23003883-02 and EMX23001171-02, respectively.

77.    Once again, despite the renewed EMP23003883-02 policy documents indicating a $100,000 limit for "damage to rented premises," CLI issued a Certificate of Insurance to Greentopia representing that the coverage limit was $500,000, consistent with Greentopia's prior request and payment history.

## FIRST COUNT
## DECLARATORY JUDGMENT
### (Against AXIS)

78.     Plaintiff repeats and realleges the allegations of all preceding paragraphs as though fully set forth at length herein verbatim.

79.     A valid and enforceable contract exists between Plaintiff and AXIS, consisting of the insurance policies identified as Policy Nos. EMP23003883-02 and EMX23001171-02.

80.     Pursuant to the terms and conditions of said policies, Plaintiff has fully performed all of its contractual obligations, including but not limited to the timely payment of all required premiums.

81.     Under the Contractors Pollution Liability coverage under policy number EMP23001171-02, AXIS agreed as follows:

> We will pay on YOUR behalf all sums in excess of the Deductible that YOU are legally obligated to pay as a result of a CLAIM for BODILY INJURY or PROPERTY DAMAGE caused by a POLLUTION EVENT resulting from COVERED OPERATIONS, provided that:
>
> (1) Such BODILY INJURY or PROPERTY DAMAGE occurs during the POLICY PERIOD;
> [....]

82.     Policy No. EMP23003883-02 defines a "POLLUTION EVENT" as "the discharge, dispersal, migration, seepage, release, or escape of any solid, liquid, gaseous or thermal irritant, contaminant, or pollutant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste, provided such conditions are not naturally present in the environment in the concentration or amounts discovered."

83.     The discharge of used or waste cooking oil from Greentopia's business premises constitutes a POLLUTION EVENT as defined in the policy.

84.     Policy No. EMP23003883-02 defines "PROPERTY DAMAGE" as, among

others, "CLEAN UP COSTS" and "NATURAL RESOURCES DAMAGE."

85.    The policy defines "CLEAN UP COSTS" as the "necessary expenses incurred in the investigation, removal, and remediation (including associated monitoring, neutralization, immobilization, or disposal) of contaminated soil, surface water, groundwater, or other contamination."

86.    The costs and expenses incurred by Greentopia and payable to Ken's Marine Service, Inc. ("KMSI"), as mandated by the EPA, constitute CLEAN UP COSTS under the policy.

87.    The policy defines "NATURAL RESOURCE DAMAGES" to include, among other things, the "reasonable direct costs, including costs of assessment, associated with action necessary to restore (including replacement) the natural resource to its baseline condition prior to the POLLUTION EVENT."

88.    All remediation, restoration, and related requirements imposed on Greentopia by the EPA and the Department of Homeland Security constitute NATURAL RESOURCE DAMAGES under the policy.

89.    Policy No. EMP23003883-02 defines "COVERED OPERATIONS" as "those activities performed by [Greentopia] at a job site," but the term "job site" is not explicitly defined in the policy.

90.    Greentopia conducts its business operations, including (i) transporting used cooking oil from delivery trucks to on-site reservoirs, (ii) recycling the used oil, and (iii) transporting the recycled oil back onto delivery trucks, exclusively at its premises located at 85 Porete Avenue, North Arlington, New Jersey 07031.

91.    The property located at 85 Porete Avenue, North Arlington, New Jersey 07031

was Greentopia's job site and principal place of business at the time the POLLUTION EVENT

occurred, and therefore qualifies as a covered location under the policy.

92.    The Contractor Pollution Liability coverage contains exclusions as follows, under

Sections III(H) and (J):

> This policy does not apply to any CLAIMS, CLAIM EXPENSES or
> LOSSES resulting from or arising out of:
> [....]
> H. the ownership, entrustment, maintenance, use, operation, loading or
> unloading of any AUTOMOBILE, aircraft, vessel or rolling stock beyond
> the boundaries of the site at which the COVERED OPERATIONS are
> being conducted unless endorsed onto this policy;
>
> I. waste, contaminants, pollutants, or materials transported via
> AUTOMOBILE, aircraft, vessel, watercraft or railroad rolling stock
> beyond the boundaries of the site at which YOU are performing
> COVERED OPERATIONS for YOUR client;

93.    However, the Endorsement limits these exclusions, and notwithstanding the

exclusions in Section III(H) and (J), policy number EMP23001171-02 covers POLLUTION

EVENTS which:

> i) result from the release from a COVERED AUTO and emanating from
> the TRANSPORTED CARGO.
> ii) occur during loading or unloading operations or;
> iii) commence during the transportation of YOUR PRODUCT or wastes
> by a CARRIER; and
> iv) result in BODILY INJURY, PROPERTY DAMAGE, or CLEANUP
> COSTS during the transportation of YOUR PRODUCT or wastes; and
> v) commence on or after the inception of this policy.

94.    Under the terms of the Endorsement, a "COVERED AUTO" is broadly defined to

include any land motor vehicle, whether owned, leased, or not owned by the Plaintiff.

95.    The Endorsement defines "TRANSPORTED CARGO" as "goods, products or

wastes carried by a COVERED AUTO," including those goods "during the loading and

unloading to or from a COVERED AUTO, provided that the loading or unloading is performed by

[Plaintiff]."

96.    Accordingly, there exist no legitimate grounds for AXIS to deny Plaintiff's insurance claim under the Contractors Pollution Liability policy, as the pollution at issue was caused by, or occurred during, the loading or unloading of used cooking oil from delivery trucks – an activity expressly covered under the policy terms.

97.    Furthermore, there are no valid grounds for AXIS to deny Plaintiff's claim for costs and expenses related to pollution arising from used cooking oil stored in reservoirs at Plaintiff's business premises, which leaked into the environment as a direct consequence of fire damage to those containers.

98.    Nevertheless, AXIS has improperly denied Plaintiff's claim for insurance coverage and, despite Plaintiff's timely dispute of that denial through its agents Econoworld Agency, Inc. and CLI, AXIS has maintained and reinstated their denial of coverage.

99.    Under the General Commercial Liability coverage under policy number EMP23001171-02, AXIS agreed as follows:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.
> [....]
> b. This insurance applies to "bodily injury" and "property damage" only if:
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory."

100.    Policy No. EMP23003883-02 defines "property damage" as "physical injury to tangible property, including all resulting loss of use of that property."

101.    Policy No. EMP23003883-02 defines an "occurrence" as an accident, including continuous or repeated exposure to substantially the same general or harmful conditions.

102.    Policy No. EMP23003883-02 defines the "coverage territory" as "the United

States of America" and its territories and possessions.

103.    The General Commercial Liability coverage contains exclusions for "'property damage' arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants.'

104.    However, the damage to the real estate located at 85 Porete Avenue, North Arlington, New Jersey 07031 was caused by fire and not by pollutants.

105.    Accordingly, the fire damage to the real estate premises, as well as Plaintiff's losses relating to the loss of use of the premises, fall within the scope of coverage under the General Commercial Liability policy, Policy No. EMP23003883-02.

106.    Notwithstanding the foregoing, AXIS has denied Plaintiff's claim for insurance coverage for the damages to the rented premises.

107.    To the extent that any property damage is caused by pollutants, such damage is covered under the Contractor Pollution Liability coverage.

108.    AXIS has failed to perform their contractual obligations under Policy No. EMP23003883-02 by wrongfully denying Plaintiff's claims for coverage.

109.    As a direct and proximate result of AXIS's failure to honor their contractual obligations, Plaintiff has incurred and continues to incur substantial expenses for the remediation of pollution and is at risk of claims and litigation by, among others, the EPA, the Department of Homeland Security, KMSI, and other entities not presently known but potentially involved in the remediation process.

110.    Plaintiff is entitled to a declaratory judgment that AXIS is obligated to provide insurance coverage under Policy No. EMP23003883-02 up to the policy limit of $1,000,000 and, additionally, under the umbrella policy No. EMX23001171-02 up to $4,000,000 for all

PROPERTY DAMAGE and CLAIM EXPENSES resulting from the discharge of used cooking oil that caused and/or was caused by the fire occurring on or about April 18, 2025.

## SECOND COUNT
### Breach of Contract
### (Against AXIS)

111.    Plaintiff repeats and realleges the allegations of all preceding paragraphs as though fully set forth at length herein verbatim.

112.    A valid and enforceable contract exists between Plaintiff and AXIS, consisting of the insurance policies identified as Policy Nos. EMP23003883-02 and EMX23001171-02.

113.    Pursuant to the terms and conditions of said policies, Plaintiff fully performed all contractual obligations, including the timely payment of all premiums.

114.    AXIS breached their contractual duties by failing to provide coverage and refusing to perform their obligations under the insurance policies.

115.    As a direct and proximate result of AXIS's breach, Plaintiff has suffered and continues to suffer damages in an amount to be proven at trial, including but not limited to remediation costs, regulatory penalties, and other consequential damages.

## THIRD COUNT
### Negligence
### (Against RT Defendants and CIL)

116.    Plaintiff repeats and realleges the allegations of all preceding paragraphs as though fully set forth at length herein verbatim.

117.    RT Defendants and CLI owed a duty to act prudently, professionally, and with reasonable accuracy and competence toward Plaintiff in their capacities as insurance brokers, agents, and/or producers, as imposed by common law, statute, and regulatory law, including but not limited to the New Jersey Insurance Producer Licensing Act, N.J.S.A. § 17:22A-26, et seq.,

the Surplus Lines Law, N.J.S.A. § 17:22-6.40, et seq., and other applicable laws and regulations governing the insurance industry in the State of New Jersey.

118.    Plaintiff requested that CLI procure, and CLI in turn requested that RT Defendants obtain, an insurance policy providing a $500,000 policy limit for damages to rented premises.

119.    Plaintiff further requested that CLI procure, and CLI in turn requested that RT Defendants obtain, an insurance policy providing a $1,000,000 policy limit for losses relating to pollution, specifically including coverage for pollution events occurring onsite, offsite, and during transportation of pollutants.

120.    In response to these requests, RT Defendants procured for CLI, and CLI procured for Plaintiff, insurance policies that were represented as containing the requested policy limits and coverages.

121.    Consistent with these representations, CLI issued Certificates of Insurance to Plaintiff reflecting the requested coverage limits, which was further evidenced by CLI's issuance of invoices demanding payment of premiums for said insurance policies.

122.    Contrary to the representations made in the Certificates of Insurance, the underlying insurance policy documents provided coverage of only $100,000 for damages to rented premises.

123.    Contrary to CLI's and RT Defendants' representations, and as asserted by AXIS, the procured insurance policies did not cover losses caused by pollution events occurring onsite, offsite, or during transportation.

124.    CLI and RT Defendants breached the duties they owed to Plaintiff by negligently procuring policies that failed to conform to Plaintiff's explicit requests and by making false or

misleading representations regarding the scope and limits of coverage provided..

125.    As a direct and proximate result of the foregoing breaches, Plaintiff has suffered damages in an amount to be determined at trial.

### FOURTH COUNT
**Indemnification/Contribution**
**(Against All Defendants)**

126.    Plaintiff repeats and realleges the allegations of all preceding paragraphs as though fully set forth at length herein verbatim.

127.    As a direct and proximate result of the foregoing wrongful acts and omissions by Defendants, Plaintiff has been subjected to claims for monies and reimbursement demands by its landlord, Thomas Levchak, Ken's Marine Service, Inc. ("KMSI"), and various governmental agencies for costs and expenses associated with the remediation and/or repair of pollution and damages caused by the fire on April 18, 2025 – liabilities that Plaintiff would not otherwise have been responsible for but for Defendants' breaches of their agreements and duties.

128.    In particular, AXIS interfered with Plaintiff's ability to comply with mandates issued by the EPA and the Department of Homeland Security by assigning their agent, Trident Environmental, ostensibly to "assist" with remediation, but in practice effectively halted the remediation process, thereby forcing the EPA to assume direct control over the remediation efforts.

129.    Upon information and belief, the costs of remediation increase two to threefold when the EPA takes over or manages the remediation process, as opposed to when such remediation is conducted under supervision without direct EPA involvement.

130.    There is a pending claim for money by KMSI for $601,835.80.

131.    Plaintiff anticipates a claim from its landlord, Thomas Levchak, for repair costs

related to the rented premises destroyed by the fire.

132.    The precise amount of the landlord's claim is presently unknown and remains to be determined.

133.    Plaintiff further anticipates claims and/or assessments of damages and costs from the EPA and/or the Department of Homeland Security.

134.    The exact amounts of any such governmental claims or assessments are currently undetermined.

135.    The foregoing actual and anticipated liabilities, penalties, and other financial obligations imposed upon Plaintiff, if any, were directly caused by the failure of RT Defendants and CLI to procure insurance policies consistent with Plaintiff's expressed requests and/or the breach of the insurance contracts by AXIS, specifically Policies Nos. EMP23003883- 02 and EMX23001171-02.

136.    Accordingly, Defendants are liable to indemnify and/or contribute toward Plaintiff's financial obligations to the extent Plaintiff is found liable for any sums relating to the fire incident of April 18, 2025.

## FIFTH COUNT
### Negligent Misrepresentation
### (Against CLI)

137.    Plaintiff repeats and realleges the allegations of all preceding paragraphs as though fully set forth at length herein verbatim.

138.    The insurance binder and policy documents for Policy Nos. EMP23003883-01 and EMP23003883-02, provided by RT Defendants to CLI, reflected a policy limit of $100,000 for damage to rented premises.

139.    Despite the foregoing, CLI incorrectly represented to Plaintiff, both orally and in

the Certificates of Insurance issued to Plaintiff, that the policy limits for damage to rented premises under Policy Nos. EMP23003883-01 and -02 were $500,000.

140.    Plaintiff justifiably relied upon CLI's representation regarding the policy limits for damage to rented premises.

141.    Additionally, CLI represented to Plaintiff that the Contractor Pollution Liability coverage under Policy Nos. EMP23003883-01 and -02 included coverage for pollution events occurring onsite, offsite, and during transportation.

142.    According to AXIS, Policy Nos. EMP23003883-01 and -02 do not provide coverage for pollution events occurring at Plaintiff's principal place of business located at 85 Porete Avenue, North Arlington, New Jersey 07031.

143.    According to AXIS, the representations made by CLI concerning the scope of the Contractor Pollution Liability coverage under said policies were inaccurate.

144.    Plaintiff justifiably relied on CLI's statements regarding the scope of the Contractor Pollution Liability coverage under Policy Nos. EMP23003883-01 and -02..

145.    In reliance on these representations, Plaintiff remitted full payment of the insurance premiums requested and/or invoiced by CLI.

146.    In further reliance on these representations, Plaintiff maintained the subject policies as procured and represented by CLI.

147.    As a direct and proximate result of Plaintiff's reliance on CLI's misrepresentations, Plaintiff has suffered damages, including but not limited to the difference in coverage between the represented and actual policy limits for damage to rented premises, and the lack of coverage for pollution events at Plaintiff's business premises, in an amount to be determined at trial.

**SIXTH COUNT**
**Reformation of Contract**
**(Against AXIS)**

148.    Plaintiffs repeat and reallege the allegations of all preceding paragraphs as though fully set forth at length herein verbatim.

149.    The insurance premium paid by Plaintiff to CLI for Policy Nos. EMP23003883-02 and EMX23001171-02 was, in substantial part, transmitted to and accepted by AXIS as consideration for the issuance of the subject insurance coverage.

150.    In exchange for said consideration, AXIS agreed and was contractually obligated to provide insurance coverage for losses arising from pollution events, including events such as the one that occurred as a direct result of the April 18, 2025 fire, pursuant to Policy Nos. EMP23003883-02 and EMX23001171-02.

151.    AXIS has refused to provide coverage for Plaintiff's losses relating to the pollution caused by the April 18, 2025 fire, basing their denial on strained, unreasonable, and untenable interpretations of the terms contained in Policy No. EMP23003883-02.

152.    AXIS's interpretation of the relevant policy terms effectively renders the coverage illusory, denying Plaintiff the benefit of the very coverage it sought and paid for – namely, protection against pollution losses occurring at its business premises during the normal course of its operations.

153.    The language of Policy No. EMP23003883-02 was drafted unilaterally by AXIS and presented to Plaintiff on a take-it-or-leave-it basis, without any opportunity for negotiation, and therefore constitutes a contract of adhesion.

154.    In light of the ambiguous and misleading terms of the policy and Plaintiff's reasonable reliance on the representations of coverage made by AXIS and its agents, reformation

of the contract is warranted to conform the policy terms to Plaintiff's reasonable expectations as an insured.

**SEVENTH COUNT**
**STATUTORY CLAIM PURSUANT TO N.J.S.A. § 17:22-6.63**
**(Against AXIS)**

155.    Plaintiffs repeat and reallege the allegations of all preceding paragraphs as though fully set forth at length herein verbatim.

156.    Pursuant to N.J.S.A. 17:22-6.63, an unauthorized insurer may be sued upon a certificate of insurance issued by a duly licensed surplus line agent.

157.    AXIS is an unauthorized insurer within the meaning of N.J.S.A. 17:22-6.63.

158.    CLI acted as a surplus line agent authorized to procure insurance coverage through unauthorized insurers, including AXIS.

159.    Accordingly, AXIS is bound by the policy terms and coverage limits as set forth in the Certificates of Insurance issued by CLI to Plaintiff, including but not limited to Policy Nos. EMP23003883-02 and EMX23001171-02.

160.    Plaintiff is therefore entitled to a declaratory judgment and an order directing AXIS to provide coverage consistent with the representations made in the Certificate of Insurance – namely, coverage up to $500,000 for damages to rented premises under Policy No. EMP23003883-02, and up to $4,000,000 in umbrella coverage under Policy No. EMX23001171-02.

## EIGHTH COUNT
### STATUTORY CLAIM PURSUANT TO N.J.S.A. § 17:22-6.50 and -6.52
### (Against CLI)

161.   Plaintiffs repeat and reallege the allegations of all preceding paragraphs as though fully set forth at length herein verbatim.

162.   Pursuant to N.J.S.A. § 17:22-6.50, a surplus line agent is prohibited from issuing a certificate of insurance unless the agent has received confirmation from the surplus line insurer that the insurance coverage described in the certificate has, in fact, been granted by the insurer.

163.   In violation of N.J.S.A. § 17:22-6.50, CLI issued a Certificate of Insurance to Plaintiff representing that Policy No. EMP23003883-02 provided a policy limit of $500,000 for damage to rented premises, when in fact the underlying policy issued by AXIS did not contain such a coverage limit.

164.   Pursuant to N.J.S.A. § 17:22-6.52, CLI was required to include, in writing or print, on the face of the certificate of insurance: (a) the name and license information of the insurance broker, and (b) the required statutory disclosure stating: "This Insurance is Issued Pursuant to the New Jersey Surplus Lines Law."

165.   CLI failed to include the required broker information and statutory disclosure on the certificate of insurance it issued to Plaintiff.

166.   As a direct result of CLI's statutory violations, Plaintiff was misled as to the actual scope and authority of the insurance coverage it purchased, and was deprived of material information to which it was entitled under law. Plaintiff has consequently suffered damages, including but not limited to uninsured losses, in an amount to be determined at trial.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Greentopia US, Inc., seeks judgment against Defendants, as follows:

a)      Declaring that Policy No. EMP23003883-02 is reformed to reflect the reasonable expectations of the insured, Plaintiff, such that the General Commercial Liability coverage extends to losses sustained at the real property located at 85 Porete Avenue, North Arlington, New Jersey 07031 – including damage to the structure, fixtures, equipment, improvements, and other tangible property – resulting from the fire of April 18, 2025;

b)      Declaring that Policy No. EMP23003883-02 is reformed to reflect the reasonable expectations of the insured, Plaintiff, such that the Contractor Pollution Liability coverage extends to losses arising from the discharge of used cooking oil at or around Plaintiff's principal place of business at 85 Porete Avenue, North Arlington, New Jersey 07031, including any affected areas identified by the U.S. Environmental Protection Agency and/or the Department of Homeland Security;

c)      Declaring that the General Commercial Liability coverage under Policy No. EMP23003883-02 applies to all property damage sustained at or to the premises located at 85 Porete Avenue, North Arlington, New Jersey 07031, including damage to all equipment, fixtures, improvements, and tangible property situated therein on April 18, 2025;

d)      Declaring that the General Commercial Liability coverage under policy number EMP23003883-02 is applicable with a policy limit of $500,000;

e)      Declaring that the umbrella coverage under Policy No. EMX23001171-02 applies to the April 18, 2025 fire incident and extends coverage for property damage up to a policy limit of $4,000,000;

f)      Declaring that the Contractor Pollution Liability coverage under Policy No. EMP23003883-02 applies to the pollution event that occurred at or around 85 Porete Avenue, North Arlington, New Jersey 07031, including any areas identified by the U.S. Environmental Protection Agency and/or the Department of Homeland Security as having been affected;

g)      Declaring that the Contractor Pollution Liability coverage under Policy No. EMP23003883-02 applies to all reasonable and necessary costs and expenses incurred by Plaintiff since April 18, 2025, relating to the pollution event, except to the extent of any deductible applicable under the policy;

h)      Declaring that the umbrella coverage under Policy No. EMX23001171-02 applies to the pollution event that occurred at or around 85 Porete Avenue, North Arlington, New Jersey 07031 – including any areas impacted as identified by the U.S. Environmental Protection Agency and/or the Department of Homeland Security—and covers all reasonable and necessary costs and expenses incurred by Plaintiff beginning on April 18, 2025, up to the policy limit of $4,000,000, less any deductible;

i)      Ordering Defendants to indemnify and hold harmless Plaintiff against any and all claims, demands, actions, costs, expenses, liabilities, or damages asserted against Plaintiff in connection with the April 18, 2025 fire and resulting pollution.

j)      Ordering RT Defendants and CLI to indemnify Plaintiff for all losses incurred as a result of their negligence, errors, and/or misrepresentations in connection with the procurement and representation of the insurance policies at issue;

k)      Awarding Plaintiff compensatory, consequential, incidental, expectation, and exemplary damages, including pre-judgment and post-judgment interest;

l)      Holding all Defendants jointly and severally liable for the full extent of Plaintiff's

damages;

    m)    Awarding Plaintiff its reasonable attorneys' fees, litigation expenses, and costs of suit, to the extent permitted by law, contract, or equity; and for such other, further or different relief as the Court may deem equitable, just and fair.

## DESIGNATION OF TRIAL COUNSEL PURSUANT TO R. 4:25-4

Sean S. Kwak, Esq., is hereby designated as trial counsel for Plaintiff.

## JURY DEMAND PURSUANT TO R.R. 1:8-1(b) & 4:35-1(a)-(b)

Plaintiff hereby respectfully demands a trial by jury as to all issues so triable.

Dated: August 12, 2025

**Kim, Lim & Partners**
*Attorneys for Plaintiff*

*s/ Sean S. Kwak*
Sean S. Kwak, Esq.

## CERTIFICATION PURSUANT TO R. 1:38-7(c)(2)

    I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

Dated: August 12, 2025

**Kim, Lim & Partners**
*Attorneys for Plaintiff*

*s/ Sean S. Kwak*
Sean S. Kwak, Esq.

## CERTIFICATION PURSUANT TO R. 4:5-1(b)(2)

    I hereby certify that the foregoing matter in controversy is the subject of no other action pending in any court, nor of a pending arbitration proceeding, and that no other action or arbitration proceeding is contemplated. I further hereby certify that there are no other parties who should be joined in this action, although Plaintiffs reserve their right to seek to amend the Complaint to add

such parties as discovery may reveal.

Dated: August 12, 2025

**Kim, Lim & Partners**
*Attorneys for Plaintiff*

*s/ Sean S. Kwak*
Sean S. Kwak, Esq.

# **EXHIBIT C**



## State of New Jersey
### Department of Banking and Insurance
### Office of the Commissioner
PO Box 325
Trenton, NJ 08625-0325

Tel (609) 633-7667

**Philip D. Murphy**
*Governor*

**Tahesha L. Way**
*Lt. Governor*

**Justin Zimmerman**
*Commissioner*

**CERTIFIED MAIL**                                      8/18/2025
**RETURN RECEIPT REQUESTED**

Attention:
CORPORATION SERVICE COMPANY
AXIS SURPLUS INSURANCE COMPANY
PRINCETON SOUTH CORPORATE CENTER
100 CHARLES EWING BLVD., SUITE 160
EWING, NJ 08628

    RE: Greentopia US, Inc. v. Axis Surplus Insurance Company, et alsl.
        Superior Court of New Jersey, Bergen County Law Division
        Docket No.:  BER-L-4453-25

Dear Sir/Madam:

You are hereby notified that on this date the Commissioner of the New Jersey Department of Banking and Insurance has accepted original service of process on your behalf in the above-captioned matter.  The documents served are enclosed herein.

By copy of this letter I am advising the attorney for the Plaintiff(s) in this matter that these documents have been transmitted to you, and confirming that the Commissioner of Banking and Insurance is not authorized to receive service of any further documents in this action.

Very Truly Yours,

**Margie Greco**
Administrative Assistant

C:  McCarter & English, LLP
    c/o Sherilyn Pastor, Esq.
    Four Gateway Center
    100 Mulberry St.
    Newark, NJ 07102

# **EXHIBIT D**

**Jay Lavroff, Esq.-Attorney ID# 028121985**
**LINDABURY, McCORMICK, ESTABROOK & COOPER**
53 Cardinal Drive
P.O. Box 2369
Westfield, New Jersey 07091
(908) 233-6800
Attorneys for Defendant, AXIS Surplus Insurance Company

| | |
|---|---|
| GREENTOPIA US, INC.<br><br>                    Plaintiff,<br><br>v.<br><br>CHOONG LEE INSURANCE, INC.;<br>RT SPECIALTY,<br>        a/k/a RYAN SPECIALTY, LLC;<br>        a/k/a RSG SPECIALTY, LLC;<br>AXIS SURPLUS INSURANCE COMPANY;<br>and ABC CORP. 1-10;<br><br>                    Defendants. | SUPERIOR COURT OF NEW JERSEY<br>BERGEN COUNTY – LAW DIVISION<br><br>DOCKET NO.: BER-L-4453-25<br><br>            Civil Action<br><br><br><br>**NOTICE OF FILING OF NOTICE OF<br>REMOVAL** |

TO:    Sean S. Kwak, Esq.
       Kim, Lim & Partners
       460 Bergen Boulevard, Suite 305
       Palisades Park, New Jersey 07650
       *Attorneys for Plaintiff*

     **PLEASE TAKE NOTICE** that defendants AXIS Surplus Insurance Company has

removed this action to the United States District Court for the District of New Jersey by filing the

attached Notice of Removal with the office of the Clerk of the United States District Court for

the District of New Jersey on September 4, 2025.

     Pursuant to 28 U.S.C. § 1446(b), the Superior Court of New Jersey, Law Division, Bergen

County, shall proceed no further with this action unless the case is remanded.

By:_____
       Jay Lavroff, Esq.
       **LINDABURY MCCORMICK**
       **ESTABROOK & COOPER, P.C.**
       53 Cardinal Drive
       P.O. Box 2369
       Westfield, NJ 07091
       (973) 233-6800
       Attorneys for Defendant, AXIS Surplus
       Insurance Company

Dated: September  4, 2025

10140611v2

<u>**CERTIFICATION OF SERVICE**</u>

I hereby certify that on this date, the original of the within Notice of Filing of Notice of Removal has been forwarded to the Clerk of the Superior Court of New Jersey, Bergen County, via electronic filing.

I further certify that a copy of the Motion and all supporting documents has also been served on all counsel of record via electronic filing.

**LINDABURY, McCORMICK,**
**ESTABROOK & COOPER, P.C.**
Attorneys for Defendant AXIS Surplus
Insurance Company

By:_____
         Jay Lavroff

Dated: September  4, 2025

10140611v2